**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SARAH DUBROC | CIVIL ACTION |
| VERSUS | 18-833-SDD-RLB |
| BRISTOL-MYERS SQUIBB, et al. | |

## RULING

This matter is before the court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants Bristol-Myers Squibb Company and Medical Engineering Corporation ("Defendants"). Plaintiff Sarah Dubroc ("Dubroc") has filed an *Opposition*[2] to this motion to which Defendants filed a *Reply*.[3] For the following reasons, the Court finds that the Defendants' motion to dismiss should be GRANTED.

**I.  FACTUAL BACKGROUND**

This products liability action was brought by Plaintiff, Dubroc against Defendants, Bristol-Myers Squibb Company ("BMS") and Medical Engineering Corporation ("MEC"), the manufacturers and/or makers of the silicone breast implant know as "Natural Y" or "Meme" implants. This suit arises from allegations that a gel bleed of Dubroc's Natural Y or Meme silicone breast implants led to a silicone migration "into her tissue, her lymphatic

---

[1] Rec. Doc. 15.
[2] Rec. Doc. 25.
[3] Rec. Doc. 30.

52720

system, and potentially her vascular system, causing a multitude of illnesses."[4] "A gel bleed is the microscopic diffusion of the silicone gel filler through the shell of the implant."[5]

Dubroc alleges that she underwent breast augmentation surgery in 1989 at which time she believed she was receiving saline-filled breast implants. Upon an explant surgery in 2018 however, Dubroc allegedly learned for first time that her implants were silicone "Natural Y," or "Meme" implants manufactured by BMS and marketed by MEC.[6] Dubroc alleges that BMS and MEC conveyed false and misleading information concerning the Meme implants and concealed risks to consumers such as Dubroc.[7] In her *Complaint*, Dubroc asks the Court to take judicial notice of cases and depositions from other breast implant litigation.

Based on the allegations above, Dubroc brings claims against Defendants pursuant to the Louisiana Products Liability Act ("LPLA"), the Louisiana Unfair Trade Practices Act ("LUTPA"), and the Federal Food, Drug and Cosmetic Act ("FDCA").[8]

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[9] The Court may consider "the complaint, its proper attachments, documents incorporated into the

---

[4] Rec. Doc. 14, ¶23.
[5] *Id.* at ¶12.
[6] *Id.* at ¶6.
[7] *Id* at ¶7.
[8] Id. at 9, 11.
[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

complaint by reference, and matters of which a court may take judicial notice."[10] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[11] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[15] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[16] On a motion to dismiss, courts "are not bound to accept as true a legal

---

[10] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[11] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[12] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[14] *Twombly*, 550 U.S. at 570.
[15] *Iqbal*, 556 U.S. at 678.
[16] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

52720

conclusion couched as a factual allegation."[17] On a Motion to Dismiss, the inquiry is whether the allegations in the Complaint plausibly state a claim for relief.

## B. FDCA and LUTPA Claims

As a preliminary matter, Defendants contend, and Dubroc concedes, that the FDCA does not provide a private right of action.[18] Additionally, Defendants argue, and Dubroc concedes, that the LPLA is the exclusive remedy for products liability actions against manufacturers in Louisiana, and Dubroc has no right of action against Defendants under LUTPA.[19] Thus, the FDCA and LUTPA claims are hereby dismissed with prejudice.

## C. LPLA Claims – Design Defect Claim

The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products. The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[20] Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use

---

[17] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[18] Rec. Doc. 25, p. 6 ("Plaintiff concedes there is no private right of action under the Federal Food, Drug, and Cosmetic Act as asserted by Defendants.").
[19] Rec. Doc. 25, p. 6 (" … Dubroc is legally forced to concede she has no right of action directly against Defendants under LUPTA [sic] …").
[20] La. R.S. 9:2800.54(A).

of the product by the claimant or someone else.[21]

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[22] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[23] Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[24] Rather, the claimant has the burden of proving the required elements under the LPLA.[25]

Under Section 9:2800.56 of the LPLA, a product is unreasonably dangerous in its design if, when the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

This test requires a plaintiff to prove both "that an alternative design existed" at the time the product was manufactured and "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have

---

[21] *Ayo v. Triplex, Inc.*, 457 Fed. App'x 382, 385-86 (5th Cir. 2012)(citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing La. R.S. 9:2800.54(A)).
[22] La. R.S. § 9:2800.54(B).
[23] *Id.* § 2800.54(C).
[24] *Woodling v. Hubbell Inc.,* 35 Fed. App'x 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).
[25] La. R.S. 9:2800.54(D).

exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)."[26]

In this case, Dubroc alleges that:

> the implants are unreasonably dangerous in design as provided in R.S. 9:2800.56 because there existed an alternative design for the product that was capable of preventing Plaintiff's damages with the use of other materials that did not "bleed"; and the unquestionable fact that the implants as designed would absolutely bleed silicone into her body causing her grievous injury, for which Defendants did not use reasonable care to provide an adequate warning to users and handlers of the product.[27]

Defendants contend that Dubroc has failed to allege any facts showing how the implant is allegedly defective and her Complaint lacks information on the existence of an alternative design or how an alternative design could have prevented Dubroc's alleged harm.[28] Additionally, Defendants contend that Dubroc has failed to allege that the gravity of the harm outweighed the burden of adopting an alternative design.[29] Defendants argue that, in the absence of any factual support regarding the existence of an alternative design or some identifiable causal link between the gel bleed and the injuries suffered, Dubroc has failed to state a claim under the LPLA.

Dubroc relies on *Flagg v. Stryker Corp.*[30] to support her argument that her design-defect allegations are sufficient to survive a motion to dismiss. In *Flagg*, the plaintiff alleged the he received toe implants that broke within months causing pain and suffering

---

[26] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 700-01 (5th Cir. 2012) (citing *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996)).
[27] Rec. Doc. 14, ¶24.
[28] Rec. Doc. 15-1, pp. 8-9.
[29] *Id.* at 9.
[30] 647 Fed.Appx. 314 (5th Cir. 2016).

52720

and requiring surgeries to repair. The plaintiff retained an expert to enable him to plead a more detailed amended complaint alleging that the shape, size, and material of the implants led to the alleged injury. The plaintiff alleged the product was defective and unreasonably dangerous in the following ways:

> a) Manufacturing and selling a product which is unreasonably dangerous in construction and/or composition; particularly a different alloy other than the Memometal NiTinol would have a better fatigue life and/or product life, the body temperature activated shape memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant;
>
> b) Manufacturing and selling a product which is unreasonably dangerous in design; particularly the shape and incorrect sizing contributed to the fracture of the implant and difficulty in removal once implants broke.[31]

The Fifth Circuit concluded that the plaintiff's allegations provided sufficient information to "raise a reasonable expectation that discovery will reveal evidence" to support liability.[32] The court noted that the plaintiff alleged that the shape, size, and material of the implants led to the implants' fracturing. The court found that those facts constitute "an allegation of precisely how the product failed and how that failure caused his injury and would support an ultimate verdict that the sizing and shape of implants deviated from the normal specifications and performance standards …."[33] The court also found that allegations that a different alloy would have performed better supports a conclusion that the alloy used was constructed in a way that deviated from standards. Further, the court noted that the alternative design allegations suggest that an alternative design existed which would have

---

[31] *Id.* at 317.
[32] *Id.* (citing *In re S. Scrap Material Co.*, 541 F.3d at 587 (5th Cir. 2008)).
[33] *Id.* at 318.

52720

reduced the risk of harm.[34] Ultimately, the court concluded that, "[a]lthough [the plaintiff] does not plead that the alternative alloy and design were available when the implants were produced or that the danger of the damage outweighs the burden of adopting the design, those very detailed and specific allegations are not required to plead a plausible claim at this stage, before [the plaintiff] has had an opportunity for discovery."[35]

Defendants herein attempt to distinguish the level of factual detail in *Flagg* from the present case. Defendants point out that, in contrast, "Plaintiff brings her claim almost twenty years after she obtained breast implants, has not amended her complaint in consultation with an expert, has not alleged that her implants fractured, and is not basing her claim on the shape or size of her breast implants."[36] However, the fact that Dubroc does not characterize her alleged breast implant defect consistent with allegations of a toe implant defect does not make *Flagg* inapposite. Nevertheless, the Court finds that Dubroc has failed to allege facts necessary to state a design defect claim under the LPLA.

Like the plaintiff in *Flagg*, Dubroc has claimed that "there existed an alternative design for the product that was capable of preventing Plaintiff's damages with the use of other materials that did not 'bleed' …"[37] However, in *Flagg* the plaintiff's allegations that a different alloy than the one used in the toe implants would have performed better provides more than labels and conclusions. In the present case, the Court is unable to make the same inferential leap the Fifth Circuit made in *Flagg.* The allegations in *Flagg*

---

[34] *Id.*
[35] *Id.* (citing *Becnel v. Mercedes-Benz USA, LLC*, No. 14-003, 2014 WL 4450431, at *2-4 (E.D. La. Sept. 10, 2014); *McLaughlin v. GlaxoSmithKline, LLC*, No. 12-2946, 2014 WL 669349, at *4 (W.D. La. Jan. 6, 2014)).
[36] Rec. Doc. 30, pp. 2-3.
[37] Rec. Doc. 14, ¶24.

allowed the "court to 'draw the reasonable inference that [the Manufacturing Defendants are] liable for' the damage [the plaintiff] suffered, due to the implants' use of a poorly-performing alloy, instead of a different metal alloy and a different shape and size to reduce the risk of malfunctioning and injury."[38] Here, Dubroc has not alleged that the design defect was "due to" anything. In *Flagg,* the plaintiff alleged that the nature of the defect, i.e. the alloy used, and the conditions or cause of the defect, i.e. body temperature, compromised or caused a fracture of the alloy.[39] The facts plead herein fall short of plausibly pleading a defect. In the instant case, Dubroc has failed to allege any specificity or any facts regarding the nature or cause of the alleged defect.

Dubroc is also required to plead the likelihood that the product's design caused the harm complained of, and that the gravity of that harm, together outweighed the burden of adopting the alternative design. However, in *Flagg*, the Fifth Circuit found that "[a]lthough [the plaintiff] does not plead that the alternative alloy and design were available when the implants were produced or that the danger of the damage outweighs the burden of adopting the design, those very detailed and specific allegations are not required to plead a plausible claim at this this stage, before [the plaintiff] has had an opportunity for discovery."[40]

Even under the seemingly less rigorous approach to products liability cases as set forth in *Flagg*, Dubroc has still failed to state a claim.[41] Unlike the plaintiff in *Flagg*, Dubroc

---

[38] *Flagg,* 647 F. App'x 314, 318 (5th Cir. 2016).
[39] *Id.* at 317. ( "… the body temperature activated shape memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant.")
[40] *Id.* at 318.
[41] *See Donald v. AstraZeneca Pharmaceuticals*, LP, 2017 WL 1079186 at *3 (E.D. La. March 22, 2017) ("In following the Fifth Circuit's quite generous instruction on specificity required at the pleading stage for an

makes only conclusory allegations of a design defect. The first element of a design defect claim is that an alternative design of the product existed that could have prevented the harm. Dubroc's only design defect allegation is that "there existed an alternative design for the product that was capable of preventing Plaintiff's damages with use of other materials that did not 'bleed.'"[42] Without more, these conclusory allegations fail to state a plausible design defect claim.

### D. Failure to Warn Claim

Dubroc also asserts a failure to warn claim under the LPLA. To successfully establish a failure to warn claim under the LPLA, the plaintiff must allege that, at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage, and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.[43] Dubroc alleges only failure to warn at the time the implants left the Defendants' control.[44] Dubroc alleges that:

> at the time [the implants] left Defendants' control Defendants knew implantation of the implants would unquestionably result in gel bleed of silicone in to Plaintiff's body and cause her damage, but Defendants did not use reasonable care to provide an adequate warning about the fact of gel bleed and its consequences required by R.S. 9:2800.57.[45]

---

LPLA claim …"); *Hernandez v. Siemens Corporation*, 2016 WL 6078365 (W.D. Tex. Oct. 17, 2016) ("Even taking note of *Flagg*'s generous view of discovery in a products liability case …").
[42] Rec. Doc. 14, ¶24.
[43] La. Rev. Stat. § 9:2800.57(A).
[44] The LPLA also provides another avenue of failure to warn claims for situations where, after the product leaves the manufacturer's control, the manufacturer acquires knowledge of the potentially harmful characteristic, yet fails to provide an adequate warning to users.
[45] Rec. Doc. 14, ¶25.

Although the Court found that Dubroc failed to plead a design-defect claim, "even if a product is not defectively designed or constructed, a manufacturer may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage."[46] Nevertheless, Dubroc has failed to sufficiently state a claim for failure to warn. In the context of medical products dispensed by a physician, Louisiana law applies the learned intermediary doctrine.[47] According to the learned intermediary doctrine, "a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug."[48] Dubroc fails to allege any facts regarding any warning or failure to warn her physician.

Dubroc appears to acknowledge her deficient pleading in her *Opposition* to the present motion and requests leave to amend her *Complaint* with allegations consistent with an excerpt from an unauthenticated affidavit that is included within Dubroc's *Opposition*.[49] Notwithstanding Dubroc's request, on a motion to dismiss, "a district court generally must limit itself to the contents of the pleadings, including attachments thereto."[50] Additionally, district courts "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."[51] Here, the excerpt of the doctor's affidavit attached to Dubroc's *Opposition* is not referenced in her *Complaint*. And

---

[46] *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001).
[47] *Zachary v. Dow Corning Corp.*, 884 F.Supp. 1061, 1065 (M.D. La. 1995).
[48] *Stahl v. Novartis Pharmaceuticals Corp.* 283 F.3d 254, 265 (5th Cir. 2002).
[49] Rec. Doc. 25, pp. 11-12.
[50] *Brand Coupon Network, LLC v. Catalina Marketing Group*, 748 F.3d 631 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) (internal quotations omitted)).
[51] *Id.* (citing *Collins*, 224 F.3d 496, 498).

considering Dubroc contacted the doctor "in response to BMS's allegations,"[52] it appears to have been created after her *Complaint* was filed. For the purposes of the failure to warn claim, the Court declines to consider the affidavit excerpt in Dubroc's *Opposition* and finds that Dubroc has failed to state a cognizable failure to warn claim. Specifically, Dubroc failed to allege anything regarding BMS's warning to her physician, or that he would have treated her differently had he received a warning.[53]

### E. Breach of an Express Warranty

Dubroc also alleges Defendants breached an express warranty. Under the LPLA, a product is unreasonably dangerous when it does not conform to an express warranty made by the manufacturer if the express warranty has induced someone to use the product and the claimant's damage was proximately caused because the warranty was untrue.[54] In addition to the above elements, a plaintiff must "(1) allege the content of the warranty and (2) explain how the warranty was untrue."[55]

Defendants contend that Dubroc has failed to sufficiently allege a breach of an express warranty because Dubroc has failed to identify an express warranty, failed to allege where the warning appeared, and failed to allege that she or her doctor were induced to use the implants because of the express warranty. Dubroc's entire allegation of an express warranty is:

> Finally, the implants are unreasonably dangerous because they do not conform to the express warranty made by Defendants about the safe nature of the product, particularly its "cohesive" gel, which was intended to induce physicians to use the implants and Plaintiff's damage was proximately

---

[52] Rec. Doc. 25, p. 11.
[53] *Flagg v. Stryker Corp*, 647 Fed.Appx. 314, n. 3 (5th Cir. 2016).
[54] La. R.S. 9:2800.58.
[55] *Robertson v. AstraZeneca Pharms.*, 2015 WL 5823326 at *5 (E.D. La. Oct. 6, 2015).

caused because the express warranty was untrue pursuant to R.S. 9:2800.58.[56]

Dubroc's allegations are insufficient to support a claim for breach of an express warranty. She fails to allege facts which would allow the Court to infer that an express warranty was given. Even if the Court infers that the manufacturer gave some sort of an express warranty about a "cohesive gel," she does not allege that the "cohesive" gel was related to her injury. Nor does Dubroc allege that she, or her physician, were induced by this express warranty. Dubroc alleges that the alleged warranty was "intended to induce physicians," but she fails to allege facts that she, or her physician, were induced by any alleged warranty.

### F. Leave to Amend

Dubroc requests leave to amend her *Complaint* throughout her *Opposition* to the instant motion. Dubroc has already amended her *Complaint* to allege the parties' citizenship pursuant to the Court's order on October 5, 2018.[57] Defendants contend that Dubroc should not be allowed to amend the complaint because "[i]t would be patently unfair to force Defendants to defend this matter and to allow Plaintiff to use her insufficiently plead claims as a ticket to conduct a fishing expedition in hopes that she may later be able to set forth a claim that passes muster under Rule 12(b)(6)."[58]

The Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires."[59] Moreover, "courts should ordinarily grant a plaintiff at

---

[56] Rec. Doc. 14, ¶26.
[57] Rec. Doc. 13.
[58] Rec. Doc. 15-1, p. 15.
[59] Fed. R. Civ. P. 15(a)(2).

52720

least one opportunity amend before dismissing a complaint with prejudice for failure to state a claim."[60] Here, having not been given at least one substantive opportunity to amend, Dubroc will only be granted leave to amend her LPLA claims that she has already alleged in her original *Complaint*,[61] and shall not assert any new causes of action.

## III. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[62] is GRANTED. Dubroc is granted leave to file an amended complaint within twenty-one (21) days of the date of this *Ruling*. Dubroc's leave to amend is limited to the LPLA claims already asserted. No new claims or parties shall be added.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on August 8, 2019.

*[signature: Shelly D. Dick]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[60] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).
[61] Rec. Doc. 1.
[62] Rec. Doc. 15.