**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SARAH DUBROC                                                    CIVIL ACTION
            *Plaintiff*

VERSUS                                                          18-833-SDD-RLB

BRISTOL-MYERS SQUIBB CO. d/b/a
SURGITEK, MEDICAL ENGINEERING
CORP.
                *Defendants*

**<u>RULING</u>**

This matter is before the court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants Bristol-Myers Squibb Company ("BMS") and Medical Engineering Corporation ("MEC") (collectively, "Defendants"). Plaintiff Sarah Dubroc ("Dubroc") has filed an *Opposition*[2] to this motion to which Defendants filed a *Reply*.[3] For the following reasons, the Court finds that Defendants' *Motion to Dismiss* shall be GRANTED in part and DENIED in part.

## I.     FACTS AND PROCEDURAL HISTORY

This products liability action was brought by Dubroc against Defendants, who are the manufacturers and/or makers of the silicone breast implant known as "Natural Y" or "Meme" implants. This suit arises from allegations that a gel bleed of Dubroc's Natural Y or Meme silicone breast implants led to a silicone migration "into her tissue, her lymphatic system, and potentially her vascular system, causing a multitude of

---

[1] Rec. Doc. 39.
[2] Rec. Doc. 41.
[3] Rec. Doc. 44.
59957

illnesses."[4] "Gel bleed is the microscopic diffusion of the silicone gel filler through the shell or elastomer of the implant."[5]

Dubroc alleges that she underwent breast augmentation surgery in 1989 at which time she believed she was receiving saline-filled breast implants.[6] Upon an explant surgery in 2018 however, Dubroc allegedly learned for first time that her implants were silicone "Natural Y" or "Meme" implants manufactured by BMS and marketed by MEC.[7] Dubroc alleges that BMS and MEC conveyed false and misleading information concerning the Natural Y implants and concealed risks to consumers such as Dubroc.[8] In her *Second Amended Complaint*, Dubroc asks the Court to take judicial notice of cases and depositions from other breast implant litigation.[9]

Based on the allegations above, Dubroc brings design defect and breach of warranty claims against Defendants pursuant to the Louisiana Products Liability Act ("LPLA").[10] The Court previously dismissed Dubroc's claims presented in the *First Amended Complaint* upon a Motion to Dismiss by Defendants.[11] After Dubroc filed a *Second Amended Complaint*, Defendants again moved to dismiss Dubroc's claims under Rule 12(b)(6).[12]

---

[4] Rec. Doc. 37 ¶16.
[5] *Id.* at ¶12.
[6] *Id.* at ¶6.
[7] *Id.*
[8] *Id* at ¶7.
[9] *Id.* at ¶13.
[10] *Id.* at pp. 8-12.
[11] *See* Rec. Doc. 35.
[12] See Rec. Doc. 37 (Second Amended Complaint), Rec. Doc. 39 (Motion to Dismiss).
59957

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[13] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[15]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[16] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[17] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] In order to satisfy the plausibility standard, the plaintiff must

---

[13] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[14] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[15] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

[18] *Twombly*, 550 U.S. at 570.

59957

show "more than a sheer possibility that the defendant has acted unlawfully."[19] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[20] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[21]

### B. Louisiana Products Liability Act

The LPLA establishes the "exclusive theory of liability for manufacturers regarding damages caused by their products."[22] The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[23] Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[24]

---

[19] *Iqbal*, 556 U.S. at 678.
[20] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[21] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[22] LA. REV. STAT. § 9:2800.52. *See also Jones v. Family Dollar Stores of La., Inc.*, 746 Fed.Appx. 348 (5th Cir. 2018).
[23] LA. REV. STAT. § 9:2800.54(A).
[24] *Ayo v. Triplex, Inc.*, 457 Fed. App'x 382, 385-86 (5th Cir. 2012) (citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing LA. REV. STAT. § 9:2800.54(A)).
59957

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[25] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[26] Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[27] Rather, the claimant has the burden of proving the required elements under the LPLA.[28]

Defendants contend that "Plaintiff's claims for design defect and breach of express warranty fail to satisfy the LPLA requirements and *Twombly*."[29] Additionally, as Dubroc points out, the failure to warn claim presented in the *Second Amended Complaint* "has not been addressed or challenged by Defendants and therefore remains a viable cause of action."[30] For the purposes of this *Motion*, then, the Court shall only consider the design defect and breach of warranty theories of recovery.

       i.  <u>Design Defect</u>

Defendants argue that Dubroc "fails to allege that the alleged design defect was 'due to' anything and fails to specify any facts regarding the nature or cause of the alleged defect."[31] Dubroc responds that she "has voluntarily waived this claim and

---

[25] LA. REV. STAT. § 9:2800.54(B).

[26] *Id.* at § 2800.54(C).

[27] *Woodling v. Hubbell Inc.,* 35 Fed. Appx. 386, *4 (5th Cir. 2002) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).

[28] LA. REV. STAT. § 9:2800.54(D).

[29] Rec. Doc. 39-1 p. 5 (emphasis added).

[30] Rec. Doc. 41 p. 1; *see also* Rec. Doc. 37 ¶¶18-22, 25.

[31] Rec. Doc. 39-1 p. 5 (citing Rec. Doc. 35 p. 9).

59957

will therefore not address Defendants' argument for its dismissal."[32] Consequently, Defendants' *Motion to Dismiss* shall be GRANTED as to Dubroc's design defect claim. The Court now turns to Dubroc's breach of warranty claim.

    ii.  <u>Breach of Warranty</u>

Under the LPLA, a product is unreasonably dangerous when it does not conform to an express warranty made by the manufacturer if the express warranty has induced someone to use the product and the claimant's damage was proximately caused because the warranty was untrue.[33] In addition to the above elements, a plaintiff must "(1) allege the content of the warranty and (2) explain how the warranty was untrue."[34]

The Court previously dismissed Dubroc's breach of warranty claim because (1) she "fail[ed] to allege facts which would allow the Court to infer that an express warranty was given,"[35] (2) she failed to "allege that the 'cohesive gel' was related to her injury,"[36] and (3) she had not "alleged that she, or her physician, were induced by this express warranty."[37] Defendants argue that the allegations added into the *Second Amended Complaint* do not rectify any of these deficiencies. Further, Defendants argue that Dubroc "fails to link any alleged warranty about the feature of Defendants' products with any alleged dangerous characteristic."[38]

---

[32] Rec. Doc. 41 p. 1.
[33] LA. REV. STAT. § 9:2800.58.
[34] *Robertson v. AstraZeneca Pharms.*, 2015 WL 5823326 at *5 (E.D. La. 2015).
[35] *See* Rec. Doc. 35 p. 13).
[36] *See Id.*
[37] *See Id.*
[38] Rec. Doc. 39-1 p. 8.
59957

According to Defendants, "the Second Amended Complaint simply adds allegations of the alleged intent behind the alleged warranty, cites caselaw defining an express warranty, and asks the court to take judicial notice of alleged testimony in another case."[39] Defendants assert that the allegations set forth by Dubroc do not demonstrate that Defendants actually provided an express warranty to Dubroc or her doctor.[40] Dubroc responds that citing to a specifically stated warranty is not necessary, and "the requirements for specificity of the location and materials in which the warranty was made are better suited for the summary judgment stage."[41] Dubroc directs the Court to *Ivory v. Pfizer, Inc.*, in which the Western District of Louisiana held that *Twombly* does not require the plaintiff "to set forth such precise, detailed allegations" regarding the explicit words used to create the alleged express warranty.[42]

The express warranty alleged by Dubroc is:

> 23. Further, the implants are unreasonably dangerous because the do not conform to the express warranty made by Defendants about the safe nature of the product, particularly its "cohesive" gel, which was intended to induce physicians to use the implants in violation of R.S. 9:2800.58 by way of expressly warrantying their safety due to alleged correction of the gel bleed problem. . . . Lynch [the founder of MEC] specifically testified that MEC advertised its breast implants as having "highly cohesive" silicone gels in order to increase sales of its product, knowing full well that its silicone gel would

---

[39] Rec. Doc. 39-1 p. 7 (citing Rec. Doc. 2 ¶¶23-24).

[40] *Id.*

[41] Rec. Doc. 41 p. 2-3 (citing *Ivory v. Pfizer Inc.*, 2009 WL 3230611 (W.D. La. 2009)).

[42] *Ivory*, 2009 WL at *5. *See also McLaughlin v. GlaxoSmithKline, LLC*, 2014 WL 669349 (W.D. La. 2014). Defendants cite to other case law indicating that *Iqbal* and *Twombly* do in fact require heightened specificity as to the precise language used to provide an express warranty. Rec. Doc. 39-1 p. 8 (citing *Robertson*, 2015 WL 5823326; *Corley v. Stryker Corp.*, 2014 WL 3375596 (W.D. La. 2014)).

59957

bleed through the elastomer shell containing it and migrate into tissues away from the breast implant.

24. Defendants misled the public and healthcare providers, including Plaintiff's physician, by marketing the implant as containing a more "cohesive" silicone gel, suggesting an absence of gel bleed . . .. [43]

La. R.S. 9:2900.53(6) defines "express warranty" as:

a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.[44]

Dubroc argues that the use of the term "cohesive" implied "an absence of gel bleed" and thus expressly warranted against silicone gel bleed through the elastomer shell.[45] Regardless of the degree of specificity required by *Iqbal* and *Twombly* for the precise language used to provide an express warranty, Dubroc's allegations are sufficient to survive a motion to dismiss. Put simply, Dubroc alleges that Defendants provided a warranty against gel bleed by advertising its product as having "highly cohesive" silicone gel. With this allegation, Dubroc shows a "representation, statement of alleged fact or promise" about the Natural Y implants that would enable

---

[43] Rec. Doc. 37 ¶23-24.
[44] La. Rev. Stat. § 9:2800.53(6).
[45] Rec. Doc. 37 ¶23-24.
59957

a reasonable jury to find that the statement "represents, affirms or promises" that the implant will not result in gel bleed.[46]

Dubroc alleges that the advertised "highly cohesive" silicone gels induced her and her physician to use the product.[47] Dubroc alleges that "the breakdown of the polyurethane coating which then dissolved into the body" caused her injuries, providing a relation between the gel and her injuries and indicating a dangerous characteristic of the product.[48] Dubroc has therefore alleged facts showing that: (1) the Natural Y implants were unreasonably dangerous, (2) Defendants provided an express warranty against the risk of gel bleed, (3) Dubroc and her physician were induced to use the product because of the warranty, and (4) the warranty was untrue. Further, Dubroc's allegations demonstrate the content of the warranty and how the warranty was allegedly untrue. Whatever difficulty Dubroc may have in establishing her claim at the summary judgment stage or at trial, it is inappropriate to dispose of Dubroc's breach of warranty claim at this stage in litigation, as Dubroc's *Second Amended Complaint* is cured of the deficiencies noted in the Court's prior *Ruling*.[49] alleged facts establishing a claim upon which relief can plausibly be granted. Defendants' *Motion* shall be DENIED as to Dubroc's breach of warranty claim under the LPLA.

---

[46] *See* LA. REV. STAT. § 9:2800.53(6).
[47] Rec. Doc. 37 ¶23.
[48] *Id.* at ¶18.
[49] *See* Rec. Doc. 35.
59957

## III.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[50] is **GRANTED** as to Dubroc's design defect claim and **DENIED** as to Dubroc's breach of warranty claim. Dubroc's design defect claim is dismissed without prejudice.[51]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 8, 2020</u>.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[50] Rec. Doc. 39.
[51] FED. R. CIV. P. 41(a)(1)(B).
59957